Argued and submitted October 31, 2011, affirmed August 29, 2012

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

LASHAWN ANTHONY McINTYRE, JR.,
*Defendant-Respondent.*

Multnomah County Circuit Court
091234903; A146236

284 P3d 1284

Jeremy C. Rice, Assistant Attorney General, argued the cause for appellant. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

**HASELTON, C. J.**

In this criminal prosecution involving, *inter alia*, a charge of promoting prostitution, ORS 167.012,[1] the state appeals a pretrial order excluding two rap music videos—*viz.*, "Turn This Up" and "Pimp'n (All I Know)." Defendant appeared in both videos and made general statements in one of them that, according to the state, describe his involvement in the prostitution trade. The trial court excluded the rap videos under OEC 403, reasoning that their probative value was substantially outweighed by the danger of unfair prejudice and their potential to distract the jury.

On appeal, the state contends that the videos are admissible under OEC 404(3) because they are relevant to show defendant's intent to promote prostitution as alleged in this case and that, under OEC 404(4), the trial court was precluded from excluding the evidence under OEC 403. As amplified below, in light of the Supreme Court's recent decision in *State v. Leistiko*, 352 Or 172, 282 P3d 857 (2012) (*Leistiko II*), we conclude that, even if the videos qualify as "[e]vidence of other crimes, wrongs or acts" for purposes of OEC 404(3), the state has not established that they are relevant to prove defendant's intent under the analysis established in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986). Accordingly, we affirm.

The material facts are undisputed. Defendant was indicted on numerous offenses, including promoting prostitution. Specifically, the indictment alleged, in pertinent part, that defendant, *"with intent to promote prostitution,* receive[d] and agree[d] to receive money and other property *** pursuant to an agreement and understanding that the

---

[1] ORS 167.012 provides, in pertinent part:

"(1) A person commits the crime of promoting prostitution if, *with intent to promote prostitution*, the person knowingly:

"*****

"(c) Receives or agrees to receive money or other property, other than as a prostitute being compensated for personally rendered prostitution services, pursuant to an agreement or understanding that the money or other property is derived from a prostitution activity[.]"

(Emphasis added.)

money and other property was derived from a prostitution activity * * *." (Emphasis added.)

Before trial, the state sought the admission of two publicly available rap music videos entitled, respectively, "Turn This Up" and "Pimp'n (All I Know)" that Officer Burkeen, a detective for the Portland Police Bureau with four years of experience as a vice investigator, had located on YouTube. We begin by describing the two videos.[2]

Defendant appears in the first video, "Turn This Up," and, at one point, defendant appears in front of a car as the name "Mac Shawn" appears on the screen.[3] The lyrics during that part of the video are as follows:

> "'I'm a Vegas pimp, and a Portland Mac

> "'Pimping 'hos and taxin' traps

> "'Taking bitches across the map

> "'Break it down like this baby girl let's go

> "'You can get money if you fuck them with a [unintelligible]

> "'We'll hit a couple cities, let your ass get dough

> "'A certified pimp, a bonafide ho

> "'Get money all on the row

> "'[Don't] give a fuck about the weather 'cause the bitch go 'ho

> "'On the Internet strip, on the boulevard strong

> "'You better break that trick and get my dough.'"

(Brackets in state's brief.)

In the second video, "Pimp'n (All I Know)," defendant is seen in a group on a yacht. The video features the following lyrics:

---

[2] Because we do not understand defendant to take issue with the state's recitation of the videos' lyrics and defendant's statements in the state's brief, we take our quotations from that brief.

[3] During the offer of proof at the hearing concerning the admissibility of the videos, Burkeen explained that "Mac Shawn" is a name that she associates with defendant.

"'Cause pimp'n is all I know about

"'Pimp'n is all I talk about

"'It's pimp'n, it's pimp'n, it's pimp'n

"'Pimp'n over here, pimp'n over there, pimp'n on a bitch, everywhere

"'The mall, the zoo, and the state fair

"'The car on the ground, and the plane in the air

"'Lions and tigers and pimps, oh yeah

"'Hoing ain't easy and life ain't fair

"'Your feet hurt bitch, I don't care

"'Get dressed, get ready, and do your hair

"'What do I look like, a sucker-ass square?

"'All my money, bitch, I don't share

"'I build-a-bitch, like build-a-bear.'"

Following the lyrics, the music stops and several individuals, including defendant—identified by the name "Mac Shawn"—speak directly into the camera. At different points during the remainder of the video, defendant makes the following three statements:

(1) "'This isn't the fucking Villa ni**er. This is what it mother fucking do, ni**er. Mac Shawn, understand it bitches. Don't fuck with me. I want all the dough, I want all the shit. We're doing some moving, bitch.'"

(2) "'We want all the shit. * * * Trying to knock your bitch, I'm going to knock your bitch, ni**er.'"

(3) "'We're out here, bitch. I'm fitting to take that bitch, ni**er. You better hide her, ni**er.'"

(Omissions in state's brief.)

During the state's offer of proof at the hearing concerning the admissibility of the evidence, Burkeen described the significance of some of the lyrics. For example, according to Burkeen, in the prostitution trade, the term "'bitch'" refers to a prostitute and the phrase "'taking bitches across the map'" refers to taking prostitutes "out of

state to work." She also explained that defendant's reference to "'knock[ing]'" and "'tak[ing]'" a "'bitch'" refers to the practice of one pimp stealing a prostitute from another pimp.

The trial court ultimately determined that both videos should be excluded under OEC 403 on the ground that their probative value was substantially outweighed by the danger of unfair prejudice and their potential to distract the jury. Consistently with that ruling, the trial court entered a pretrial order excluding the videos. This appeal ensued.

On appeal, as before the trial court, the parties' competing contentions concerning the admissibility of the videos focus on the proper application of two rules of evidence—*viz.*, OEC 404, which concerns, as pertinent here, the admissibility of "[e]vidence of other crimes, wrongs or acts," and OEC 403, which concerns the exclusion of relevant evidence for, among other reasons "unfair prejudice." We begin by describing those rules of evidence because they provide the necessary context for understanding the parties' contentions.

As pertinent here, OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Generally, even if evidence qualifies for admission under OEC 404(3), a court may exclude the evidence under OEC 403[4] if its probative value is substantially outweighed by the danger of, among other things, unfair prejudice and confusion of the issues. *State v. Berg*, 223 Or App 387, 397, 196 P3d 547 (2008), *adh'd to as modified on recons*, 228 Or App 754, 208 P3d 1006, *rev den*, 346 Or 361 (2009). However,

---

[4] Specifically, OEC 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

in criminal actions, OEC 404(4)[5] precludes a trial court from excluding relevant evidence of a defendant's other crimes, wrongs, or acts under OEC 403, except as required by the state or federal constitution. *State v. Phillips*, 217 Or App 93, 98, 174 P3d 1032 (2007), *rev den*, 345 Or 159 (2008) (reasoning that, unless constitutionally required, OEC 404(4) precludes OEC 403 balancing of probative value against, *inter alia*, undue prejudice).

On appeal, the state's position proceeds from the premise that OEC 403 is inapposite in these circumstances— that is, the state does not contend that, even if OEC 403 does apply, the trial court somehow erroneously assessed the relative probative value and prejudicial impact of the videos. Rather, to avoid OEC 403 balancing (and the concomitant "abuse of discretion" standard of appellate review),[6] the state asserts that the admissibility of this evidence is governed by OEC 404(3)—and, derivatively, OEC 404(4). Specifically, the state contends that (1) the videos are admissible pursuant to OEC 404(3) because they are relevant to demonstrate defendant's intent to promote prostitution; and (2) for that reason, OEC 404(4) precluded the trial court from excluding the videos under OEC 403. As we understand it, those contentions are, in turn, necessarily predicated on the proposition that defendant's appearance in both videos and his three statements in "Pimp'n (All I Know)," 252 Or App at 20, are tantamount to an acknowledgement that he has been involved in the prostitution trade—that is, that he has been involved in "other crimes, wrongs or acts" for purposes of OEC 404(3).[7]

---

[5] OEC 404(4) provides, in part:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [OEC 406 to 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403][.]"

[6] *See State v. Shaw*, 338 Or 586, 614-15, 113 P3d 898 (2005) ("Although we examine whether the trial court properly applied the balancing test that OEC 403 prescribes for errors of law, we review the trial court's ultimate determination as to whether evidence is unfairly prejudicial under OEC 403 for abuse of discretion.").

[7] Specifically, the state contends:

"The state alleged that defendant, with the intent to promote prostitution, received money derived from prostitution activities. As evidence of defendant's intent to promote prostitution, the state sought to introduce two rap videos

Defendant, among other things, remonstrates that, even if the videos "are viewed as 'other act' evidence" for purposes of OEC 404(3), they are not relevant to prove defendant's intent to promote prostitution. That is so, according to defendant, because the state failed to establish that the evidence is relevant to the issue of defendant's intent under the analysis established by the Supreme Court in *Johns*. For reasons that we will explain, we agree with defendant.

The Supreme Court's very recent decision in *Leistiko II* concerned the admissibility of "[e]vidence of other crimes, wrongs or acts" under OEC 404(3). In *Leistiko II*, the defendant had been charged with, *inter alia*, three counts of first-degree rape. At trial, "[t]o prove that each of the three victims had not consented to [the] defendant's sexual advances, the state offered evidence that [the] defendant had forcibly compelled a fourth woman to engage in sexual intercourse with him." *Leistiko II*, 352 Or at 174. The trial court admitted the testimony of the fourth woman and this court sustained that ruling, and, consequently, affirmed defendant's convictions. *State v. Leistiko*, 240 Or App 338, 246 P3d 82 (2011) (*Leistiko I*), *rev'd in part*, 352 Or 172, 282 P3d 857 (2012).

On review, the Supreme Court addressed the state's contention that the fourth woman's testimony was admissible under OEC 404(3) to prove that the defendant "intended to forcibly compel the victims to have sexual intercourse with

---

produced by and featuring defendant. In those videos, defendant and others hold themselves out as pimps, declare their reasons for engaging in the prostitution trade, and generally extol the virtues of pimping. Defendant makes several specific statements in the videos about his reason for engaging in the prostitution trade (to make money) and some of his tactics as a pimp (that he steals prostitutes from other pimps).

"The videos are relevant to show defendant's intent to promote prostitution. It is not enough for the state to prove that defendant received money earned by a prostitute. The state also must establish the specific reason defendant did so. The evidence of defendant bragging about his involvement in the prostitution trade, declaring his reasons for engaging in that trade, and describing specific pimping practices, is relevant to that element of the offense.

"Further, the videos' admissibility is not subject to 'balancing' under OEC 403. Under OEC 404(4), evidence of the defendant's acts is admissible if relevant without any OEC 403 balancing, unless constitutionally required. Here, because the evidence is of defendant's relevant acts, the fact that it may unfairly prejudice the defense is not a permissible reason to exclude it."

him." *Leistiko II*, 352 Or at 182 (internal quotation marks omitted). In resolving that contention, the Supreme Court deconstructed its decision in *Johns*. As pertinent here, in *Johns*, the court held that, when evidence of other crimes, wrongs, or acts is proffered as proof of intent, a court must consider five specific factors to determine whether the evidence is relevant to that issue. *See Johns*, 301 Or at 555-56 (describing multifactor relevance test). In *Leistiko II*, the Supreme Court distilled two fundamental principles from *Johns* and reiterated those principles.

First, the *Leistiko II* court noted that the relevance of evidence of other crimes, wrongs, or acts to prove intent is derived from the "doctrine of chances." 352 Or at 182. That doctrine is based on the principle that multiple similar acts are unlikely to occur accidentally or with an innocent state of mind. *Id.* As the court in *Leistiko II* explained, "the doctrine of chances does not ask the trier of fact to infer the defendant's conduct (entertaining a particular *mens rea*) from the defendant's subjective character. It depends instead on the proposition that multiple instances of similar conduct are unlikely to occur accidentally." *Id.* (brackets, citation, and internal quotation marks omitted). To ensure that the necessary degree of similarity exists between multiple instances of similar conduct, the court, in *Johns*, established the cumulative, five-factor, relevance test (set out below, 252 Or App at 26-27) that must be satisfied before evidence of other crimes, wrongs, or acts is admissible to prove intent.

Second, proceeding from that premise, the court in *Leistiko II* explained that, before evidence of other crimes, wrongs, or acts is admissible to prove intent, one of two disjunctive conditions must be satisfied. Specifically, the court explained:

> "[T]he doctrine of chances rests on the proposition that the defendant either concedes the act that requires proof of a mental state or the trial court instructs the jury not to consider uncharged misconduct evidence offered to prove intent unless and until the jury finds the act that requires proof of intent to have been done and is proceeding to determine intent."

352 Or at 185. As the court noted, unless either of those conditions is satisfied, the admission of evidence of other crimes, wrongs, or acts to prove intent creates "an unacceptable risk that the uncharged misconduct evidence is being admitted to prove the act, not the defendant's mental state." *Id.* at 186.

In sum, *Leistiko II* elucidated two principles that inform our analysis here—the second of which is dispositive in this case: *First,* evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's intent under OEC 404(3) unless either (a) the defendant has conceded the charged act itself or (b) the jury is instructed not to consider the evidence unless it finds that the defendant committed the charged act. *Second* (assuming that either of those conditions is satisfied), when evidence of other crimes, wrongs, or acts is proffered as proof of a defendant's intent, a court ordinarily must apply the cumulative, five-factor test established in *Johns* to determine whether the evidence is relevant. Applying those principles to the circumstances of this case, we conclude, as amplified below, that the trial court properly excluded the videos.

We note, at the outset, that the following analysis assumes without deciding the correctness of the state's predicate contention pertaining to the applicability of OEC 404(3). Specifically, for present purposes only, we accept, without deciding, the correctness of the state's contention that the videos are, in fact, "[e]vidence of other crimes, wrongs or acts" for purposes of OEC 404(3) because they are evidence of defendant's involvement in the prostitution trade.[8]

Further, we assume, without deciding, that the state has established or, on remand in this pretrial context,

---

[8] We note that defendant contends otherwise. Specifically, defendant asserts:

"[E]ven if the videos are relevant, they are relevant because they are defendant's statements, not 'other act' evidence. Neither video discloses any actual or purported 'other acts'; they merely contain generalized statements about participation in the prostitution trade and the benefits thereof. Because the videos are not 'other acts' evidence, OEC 404 in its entirety, including OEC 404(4), is categorically inapplicable to the videos. Consequently, the trial court may engage in OEC 403 balancing. Because the trial court did properly engage in the OEC 403 analysis and reached a permissible result, this court may not disturb it and must affirm the trial court."

could establish either of *Leistiko II*'s threshold procedural predicates for admission of the videos as proof of defendant's intent—*viz.*, that (1) "defendant * * * concedes the act that requires proof of a mental state" or (2) "the trial court instructs the jury not to consider uncharged misconduct evidence offered to prove intent unless and until the jury finds the act that requires proof of intent to have been done and is proceeding to determine intent." 352 Or at 185.

With those matters assumed in the state's favor, the issue for purposes of admissibility under OEC 404 is whether the videos are relevant to prove defendant's intent. Consistently with the Supreme Court's decision in *Leistiko II*, resolution of that issue requires that we apply the *Johns* analysis.[9]

In *Johns*, the court held that, when evidence of other crimes, wrongs, or acts is proffered as proof of intent, a court must consider the following five factors to determine whether the evidence is relevant to that issue:

"(1)   Does the present charged act require proof of intent?

"(2)   Did the prior act require intent?

---

[9] Notwithstanding its own essential contention that the videos are "[e]vidence of other crimes, wrongs or acts" for purposes of OEC 404(3), the state, relying on our decision in *State v. Wilhelm*, 168 Or App 489, 3 P3d 715 (2000), asserts that the relevance analysis established in *Johns* is inapplicable. That effort to avoid *Johns* is unsurprising in that—as will become apparent shortly—the state cannot evade *Johns*'s strictures in this case.

The state's reliance on *Wilhelm* is unavailing; that case is decisively distinguishable. In *Wilhelm*, a case involving a prosecution for first-degree sexual abuse, the issue was "whether a letter describing [the] defendant's feelings for th[e] victim [was] relevant to prove his intent in touching her." 168 Or App at 493 n 2. In concluding that the *Johns* analysis was inapplicable, we explained that the issue in *Wilhelm* was qualitatively different from "whether evidence of a prior crime with one child was relevant to prove the defendant's intent in committing the charged crime with another child." *Id.*

Here, unlike in *Wilhelm*, the issue is whether evidence of defendant's prior involvement in the prostitution trade is relevant to prove his intent in committing the charged crime of promoting prostitution on a different occasion. In light of the Supreme Court's reasoning in *Leistiko II*, under such circumstances, the *Johns* analysis must be applied to determine whether the necessary degree of similarity exists between the prior crime, wrong, or act and the charged act.

"(3)   Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4)   Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5)   Were the physical elements of the prior act and the present act similar?"[10]

301 Or at 555-56.

Here, the video evidence does not satisfy *Johns*'s third (similarity of victim), fourth (similarity of type of act), and fifth (similarity of physical elements) requirements. As previously described, 252 Or App at 19-20, defendant appeared in two rap videos with lyrics extolling the prostitution trade in general terms. In one of those videos, defendant makes three general statements concerning the reasons for engaging in the prostitution trade (*i.e.*, to make money) and a tactic that pimps use (*i.e.*, stealing prostitutes from each other). *See* 252 Or App at 20 (quoting defendant's three statements). However, even accepting the state's contention that defendant's appearance in the videos and his three specific statements are an acknowledgment of defendant's prior involvement in the prostitution trade, the record is devoid of any specificity concerning that involvement. For that reason, any similarities (and differences) between the charged act and defendant's prior involvement cannot be evaluated. Accordingly, the state has not established that defendant's prior involvement in the prostitution trade is sufficiently similar to the charged act of promoting prostitution. *See State v. Deloretto*, 221 Or App 309, 314, 189 P3d 1243 (2008), *rev den*, 346 Or 66 (2009) (explaining that "[t]he [*Johns*] inquiry is cumulative: if the answer to any of the first five inquiries is negative, then the evidence is not relevant"); *State v. Rinkin*, 141 Or App 355, 368, 917 P2d 1035 (1996) (reasoning that the state "ha[s] the burden of demonstrating admissibility under the *Johns*

---

[10] We note that the court in *Johns* also identified a sixth factor—*viz.*, whether "the probative value of the prior act evidence [is] substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence[.]" 301 Or at 556. However, as we noted in *State v. Jones*, 246 Or App 412, 418, 266 P3d 151 (2011), "the enactment of OEC 404(4) in 1997 effectively removed that factor from the *Johns* analysis."

test and that, "if any [of the *Johns* factors] is not met, the evidence must be excluded").

In sum, the state cannot "have its cake and eat it too." That is, the state cannot in these circumstances avoid both OEC 403 balancing and *Johns*'s strictures as reiterated in *Leistiko II*. To the extent that the state purports to proffer the videos as evidence of other crimes, wrongs, or acts probative of defendant's intent—a characterization, which again, we assume but do not endorse—that evidence is subject to the *Johns* prerequisites, which it does not satisfy.

Affirmed.