Submitted March 16, 2015, affirmed September 14, 2016, petition for review allowed January 13, 2017 (360 Or 752)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ISRAEL OVALLE TENA, JR.,
*Defendant-Appellant.*

Lane County Circuit Court
201304366; A154735

384 P3d 521

Peter Gartlan, Chief Defender, and John Evans, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the briefs for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

## DUNCAN, P. J.

In this criminal case, defendant appeals a judgment convicting him of assault in the fourth degree against his domestic partner. In his opening brief, he raises two assignments of error. First, he asserts that the trial court erred in admitting evidence of two prior assaults against different domestic partners. Second, he asserts that, even if the trial court did not err in admitting the evidence, it plainly erred in failing to instruct the jury that it could not consider the evidence unless and until it determined whether defendant committed the charged act and was proceeding to determine whether he did so with the requisite mental state. And, in a supplemental brief, he asserts, among other things, that the trial court plainly erred in admitting the evidence without balancing its probative value against the danger of unfair prejudice.

As explained below, the trial court ruled that the challenged evidence could be admitted for two independent reasons, one of which was to prove defendant's motive in assaulting the victim. On appeal, defendant's only argument regarding the admission of the evidence to prove motive is that the trial court erred in failing to apply the test set out in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), to determine whether the two prior assaults were sufficiently similar to the charged assault to be probative of motive. We conclude that the trial court was not required to apply the *Johns* test to the evidence admitted to prove defendant's motive, and, therefore, defendant has failed to establish that the trial court erred in admitting the evidence. We also conclude that the trial court did not plainly err in failing to give a limiting instruction or in failing to balance the probative value of the evidence against the risk it posed of unfair prejudice. Accordingly, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

The state charged defendant with assault in the fourth degree, constituting domestic violence.[1] ORS 163.160;

---

[1] The indictment alleged, and defendant stipulated, that he had been convicted of domestic assault at least three times in the past. Accordingly, the conviction was a Class C felony.

ORS 132.586. The charge was based on evidence that defendant had assaulted his domestic partner. Before trial, the state filed a motion for a ruling on the admissibility of evidence that defendant had previously assaulted two other domestic partners. In the motion, the state contended that the evidence was admissible under OEC 404(3), which provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but it "may *** be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Specifically, the state contended that the evidence was admissible to prove defendant's "intent or absence of mistake or accident" under *Johns*, and to prove that defendant had a "hostile motive" toward the victim under *State v. Moen,* 309 Or 45, 786 P2d 111 (1990). The state also stated that, in accordance with *State v. Leistiko,* 352 Or 172, 282 P3d 857, *adh'd to as modified on recons,* 352 Or 622, 292 P3d 522 (2012), and *State v. Pitt,* 352 Or 566, 293 P3d 1002 (2012), it intended to request a jury instruction "limiting the consideration of the prior bad act only after the jury finds that the act occurred and they are considering whether the act was intentional."

At the hearing on the motion, the state presented evidence regarding the two prior assaults. But, at the state's request, the trial court deferred ruling on the motion until after the state presented evidence at trial to establish that defendant had committed the *actus reus* of the charged assault. *See Pitt,* 352 Or at 580-81 (trial court erred by ruling before trial that evidence of the defendant's prior bad acts was admissible to prove the defendant's *mens rea,* because, at that point, the state had not presented evidence sufficient to prove that the defendant had committed the *actus reus).*

At trial, the state presented evidence that, on the evening of August 10, 2011, defendant and K, his then-girlfriend, were in a dispute after K and her sister drank alcohol at several bars, in violation of a rule of the house

---

The indictment also charged defendant with one count of strangulation. ORS 163.187. At the state's request, the trial court dismissed that charge at the close of the state's evidence.

where defendant, K, and K's sister lived together. While defendant and K were arguing in their locked bedroom, defendant grabbed K by the hair and punched her. K fell to the floor, and defendant put his hand on her chin and throat and picked her up. During the argument, K's sister heard K yelling that defendant was hitting her and she needed help. Defendant refused to unlock the bedroom door. K's sister called 9-1-1 and reported that defendant was assaulting K, and defendant left the house.

After presenting that evidence, the state asked the trial court to rule on the admissibility of the evidence of the two prior assaults. That evidence, which the state had presented to the trial court during the earlier hearing on the motion, was that defendant had assaulted his then-girlfriend in 2004 and had assaulted his then-wife in 1997. In both prior assaults, defendant punched and strangled the victims and prevented them from leaving; he also moved one of the victims by her hair. During the 2004 assault, defendant was angry at his girlfriend because of her interaction with another man. During the 1997 assault, defendant was angry with his wife over child-custody issues and his wife's plans to go to school. As it had in its written motion, the state argued that the evidence of the two prior assaults was admissible to prove "intent or absence of mistake or accident" under *Johns* and to prove "hostile motive" under *Moen*.

The state's theory under *Johns* was that the evidence was admissible to prove that K's injuries were not caused by accident. In his opening statement, defendant had asserted that, while he and K were fighting about her drinking, K tripped and hit her face on a rocking chair. The state argued that the evidence of the two prior assaults was admissible under *Johns* to disprove that theory. In *Johns*, the Supreme Court held that evidence of other acts can be relevant to prove intent under the "doctrine of chances," a theory of relevance premised on the view that "an unusual and abnormal element might perhaps be present in one instance, but the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them." 301 Or at 553 (citing John Henry Wigmore, 2 *Evidence* § 302, 246 (Chadbourne

rev 1979)). The Supreme Court also set out a six-factor test for determining whether evidence of other acts is relevant to prove intent on a "doctrine of chances" theory.[2] In this case, the state argued that the evidence of the prior assaults satisfied the *Johns* test.

The state also argued that the evidence was admissible under *Moen* to show that defendant "has a hostile motive in relation to his domestic partners." According to the state, the evidence was admissible to show that, "while in a domestic setting, [defendant] acts violently and intentionally to harm his partners when he is agitated."

In response, defendant argued that the evidence was not admissible under *Johns* because he was not claiming that he had injured the victim by accident and, consequently, the evidence was not relevant under a doctrine-of-chances theory. He further argued that the evidence did not satisfy the *Johns* test because the prior assaults were not sufficiently similar to the charged assault and the class of victims—domestic partners—was too broad. In defendant's view, the evidence was "really just character evidence" that the state sought to use to show an "emotional propensity" to commit domestic assault. Defendant contended that the evidence violated OEC 404(2), which provides that, subject to certain exceptions, "[e]vidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion."

The trial court accepted the state's argument and concluded that the evidence of the two prior assaults was admissible under *Johns* to prove defendant's "intent" and under *Moen* to prove that defendant had a "hostile motive" toward the victim. The court also noted that it would give a limiting instruction, as the state had requested.

Thereafter, the state presented evidence of the two prior assaults. And, the state submitted a limiting instruction in accordance with *Leistiko*. The trial court gave the jury a modified version of the state's instruction. The jury convicted defendant, who now appeals.

---

[2] The six-factor *Johns* test is set out below. 281 Or App at 65 n 5.

## II. ARGUMENTS ON APPEAL

As mentioned, defendant raises two assignments of error in his opening brief. First, he asserts that the trial court erred by admitting the evidence under OEC 404(3), as construed in *Johns* and *Moen*. Second, he argues that, even if the evidence was admissible, the trial court plainly erred under *Leistiko* and *Pitt* by failing to instruct the jury that, before it could consider the evidence of the prior assaults, it had to first determine whether defendant committed the *actus reus* of the charged assault and then, and only then, could it consider the evidence of the prior assaults to determine whether defendant had acted with the requisite *mens rea*.

After defendant filed his opening brief, the Supreme Court issued its opinion in *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), holding that "OEC 404(4) *** supersede[s] OEC 404(3) in criminal cases, except, of course, as otherwise provided by the state or federal constitutions."[3] 357 Or at 15. The Supreme Court further held that evidence that a defendant has a propensity to sexually abuse children is logically relevant under OEC 401 in a prosecution for child sexual abuse, and ultimately concluded that, in child sexual abuse prosecutions where the state offered prior bad acts evidence to prove that the defendant had a propensity to sexually abuse children, due process requires that, on request, trial courts determine whether the probative value of the evidence is outweighed by the risk of unfair prejudice under OEC 403. *Williams*, 357 Or at 18-19 ("In our view, the only way that a court can ensure that the admission of 'other acts' evidence is not unfairly prejudicial and a violation of 'fundamental concepts of justice' is to conduct OEC 403

---

[3] OEC 404(4) provides:

"(4) In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) ORS 40.180, 40.185, 40.190, 40.195, 40.200, 40.205, 40.210 and, to the extent required by the United States Constitution or the Oregon Constitution, ORS 40.160;

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

balancing. We therefore hold that that balancing is required by the Due Process Clause."). Relying on *Williams,* defendant filed a supplemental brief, in which he argues, among other things, that the trial court committed plain error by admitting the evidence of the two prior assaults without balancing the probative value of the evidence against the danger of unfair prejudice. We address each of defendant's arguments, and the state's responses to them, in turn.

## III.   ANALYSIS

A.   *Admissibility of the Challenged Evidence Under OEC 404(3)*

As mentioned, in his first assignment of error, defendant contends that the trial court erred by admitting the evidence of the two prior assaults under OEC 404(3), as construed in *Johns* and *Moen.* And, as also mentioned, in *Williams,* the Supreme Court held that OEC 404(4) "supersedes" OEC 404(3). After *Williams,* we observed that "the types of relevant evidence set out in OEC 404(3) ('motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident') remain viable theories for the admission of prior acts evidence." *State v. Clarke,* 279 Or App 373, 382, 379 P3d 674 (2016) (citing *State v. Turnidge (S059155),* 359 Or 364, 434, 374 P3d 853 (2016)). "Thus, in evaluating whether evidence of 'other crimes, wrongs or acts' is admissible for nonpropensity purposes, we may draw on the 'settled principles' of relevance embodied in OEC 404(3) and case law construing that provision." *Clarke,* 279 Or App at 382 (quoting *Turnidge,* 359 Or at 434). Accordingly, we consider whether, as defendant argues in his opening brief, the trial court erred by concluding that the evidence at issue was admissible under *Johns* and *Moen.*

To provide context for the parties' arguments, we begin with a review of *Johns* and *Moen.* As mentioned, in *Johns,* the Supreme Court addressed the admissibility of "prior bad acts" or "other acts" evidence under a doctrine-of-chances theory. 301 Or at 550-56. The doctrine of chances is "the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that

this element cannot explain them all." *Id.* at 553 (quoting Wigmore, 2 *Evidence* § 302 at 246). It is premised on the view that "an unusual and abnormal element might perhaps be present in one instance, but the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them." *Id.* (citing Wigmore, 2 *Evidence* § 302 at 246). Thus, the doctrine is "based on improbability and demands proof of similarity." *Id.* at 552.

Under the doctrine of chances, the relevance of other acts evidence to prove a defendant's criminal intent depends on the likelihood that "the act could be repeated, within a limited time and under given circumstances, with an innocent intent." *Id.* (citing Wigmore, 2 *Evidence* § 302 at 246). As the Supreme Court explained,

> "'[i]n isolation, it might be plausible that the defendant acted accidentally or innocently; a single act could easily be explained on that basis. However, in the context of other misdeeds, the defendant's act takes on an entirely different light. The fortuitous coincidence becomes too abnormal, bizarre, implausible, unusual or objectively improbable to be believed.'"

*Id.* at 552-53 (quoting Edward J. Imwinkelried, 8 *Uncharged Misconduct Evidence* § 5:05, 10-11 (1984)). Thus, under *Johns*, the relevance of other acts evidence to prove "intent"—specifically, in the sense of "a lack of mistake or accident"—depends on the improbability of a "fortuitous coincidence." *Id.*[4]

In order for other acts evidence to be logically relevant under the doctrine of chances, the other act must be similar to the charged act. *Id.* at 553 (the idea underlying the doctrine is that "'similar results do not usually occur through abnormal causes'") (quoting Wigmore, 2 *Evidence* § 302 at 246). Consequently, in *Johns*, the court formulated

---

[4] Because the doctrine of chances is premised on the idea that it is unlikely that multiple instances of similar conduct will be the result of an innocent intent, evidence is logically relevant under the doctrine only when the other acts involve innocent intents. In other words, because the doctrine is based on the idea that recurring similar mistakes or accidents are increasingly unlikely, the doctrine supports the admission of other acts evidence only when the other acts were, or are claimed to have been, the product of a mistake or accident.

a six-factor test for determining whether another act is sufficiently similar to a charged act to be admitted on a doctrine-of-chances theory.[5] *Id.* at 555-56; *see also State v. McIntyre*, 252 Or App 16, 24, 284 P3d 1284 (2012) (the *Johns* test serves "[t]o ensure that the necessary degree of similarity exists between multiple instances of similar conduct").

Subsequently, in *Moen*, the Supreme Court applied the *Johns* test to "hostile motive" evidence. In *Moen*, the defendant was convicted of the aggravated murder of his wife and her mother, who were shot with a .38 caliber revolver. 309 Or at 47. On direct review to the Supreme Court, the defendant challenged the trial court's admission of his wife's son's testimony that, approximately three weeks before the murders, at the house where the murders later took place, the defendant had pushed his wife and threatened to kill

---

[5] Specifically, the Supreme court in *Johns* stated:

"[I]n evaluating prior crime evidence on the issue of intent or absence of mistake, the trial judge should make these determinations:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"

301 Or at 555-56.

Following the enactment of OEC 404(4) in 1997, we held that evidence of other acts by a criminal defendant could be admitted without applying the sixth *Johns* factor; that is, it could be admitted without balancing the probative value of the evidence against the danger of unfair prejudice. *See, e.g., State v. McIntyre*, 252 Or App 16, 27 n 10, 284 P3d 1284 (2012) (stating that the enactment of OEC 404(4) "effectively removed [the sixth] factor from the *Johns* analysis"); *State v. Dunn*, 160 Or App 422, 430, 981 P2d 809 (1999), *rev den*, 332 Or 632 (2001). The Supreme Court's recent statement in *Turnidge* that, "if a trial court determines that prior bad acts evidence is relevant to a nonpropensity purpose under OEC 404(3), the court, on a proper motion, must weigh the probative value of the evidence against its potential to unduly prejudice the defendant," 359 Or at 442, seems to cast doubt on that holding. In this case, we need not, and, accordingly, do not, express any opinion on that question.

her, her mother, and her son; pointed a shotgun at his wife and her son; and then, after putting the shotgun away, again stated that he would kill his wife and her son. *Id.* at 65-66.

The Supreme Court reviewed its holding in *Johns* and stated that, "[i]f the evidence is relevant to prove intent, then it should be tested under" the *Johns* factors. *Moen*, 309 Or at 67. It also explained that "[l]ong before *Johns*, this court recognized the relevancy of a defendant's prior hostile acts toward a homicide victim or toward a class of persons to which the victim belongs." *Id.* at 68. It elaborated, "This type of evidence has special relevance to the issue of a hostile motive, which in turn is probative of intent. Evidence that shows a hostile relationship existed between a defendant and his victim tends to shed light on a defendant's *mens rea*." *Id.*

Under the circumstances, the court explained, the defendant's prior threat against his wife showed the defendant's "homicidal intent" "because the prior act included the specific threat to kill the same final victim[.]" *Id.* at 69. Thus, "[t]he prior threat was relevant to prove that defendant later acted consistent with that expressed intent." *Id.* The court then applied the *Johns* factors and affirmed the admission of the evidence. *Id.* at 69-70.

In this case, defendant argues that the evidence of the prior assaults was not admissible under either *Johns* or *Moen*. Regarding *Johns,* defendant argues that the evidence of the prior assaults was not admissible to prove intent under the doctrine of chances because the similarities between the prior assaults and the charged assault are outweighed by their dissimilarities and because the similarities that do exist are too commonplace for the doctrine to apply. Regarding *Moen,* defendant argues only that the trial court erred in admitting the evidence to prove "hostile motive" without applying the *Johns* test and that, as he argues regarding the admission of the evidence under *Johns*, the evidence does not satisfy that test. Specifically, defendant divides the analysis under *Moen* into two steps—first, whether the evidence was probative of "hostile motive," and second, whether it meets the *Johns* test. His challenge is only to what he characterizes as the second step of the

analysis—that is, whether the evidence meets the *Johns* test.

In response, regarding *Johns*, the state argues that evidence of the prior assaults was admissible under a doctrine-of-chances theory because the prior assaults were sufficiently similar to the charged assault to satisfy the *Johns* test. Regarding *Moen*, the state argues that the trial court was not required to apply the *Johns* test in order to admit the evidence to prove "hostile motive" because, in its view, prior bad acts do not have to be similar to the charged act in order to be admissible to prove motive; alternatively, the state argues that, even if the evidence had to satisfy the *Johns* test in order to be admissible to prove "hostile motive," it did.

Because the trial court admitted the evidence of the prior assaults on two alternative grounds, if defendant is to prevail on his challenge to the admission of the evidence, he must establish that the evidence was not admissible on either of the two alternative grounds. *See Strawn v. Farmers Ins. Co.*, 350 Or 336, 366, 258 P3d 1199, *adh'd to on recons*, 350 Or 521, 256 P3d 100 (2011), *cert den*, 565 US 1177, 132 S Ct 1142, 181 L Ed 2d 1017 (2012) (noting proposition that, "when a court's decision or ruling is premised on alternative grounds, a party challenging that ruling generally must take issue with all independent and alternative grounds on which it is based to obtain relief"). That is, defendant must establish that the trial court erred by admitting the evidence under *Johns* and *Moen*. Because it is dispositive, we address only defendant's challenge to the admission of the evidence under *Moen*.

We emphasize that defendant's argument regarding the admission of the evidence under *Moen* is narrow. As explained above, defendant divides the *Moen* analysis into two steps and challenges only the second step, in which he contends the trial court was required to apply the *Johns* test. He does not argue that the court should not have allowed the evidence of the prior assaults under *Moen* for any reason other than its failure to apply the *Johns* factors.

Defendant correctly points out that, in *Moen*, the Supreme Court applied the *Johns* test when deciding whether

evidence of "hostile motive" was admissible. Despite that precedent, however, as we will explain, we conclude that, in its recent decision in *Turnidge*, the Supreme Court over-ruled that aspect of *Moen*. As a result, the trial court's failure to apply the *Johns* factors before admitting the evidence under *Moen* is not error and, accordingly, defendant's argument provides us with no basis on which to reverse the trial court's ruling that the evidence was admissible under *Moen*.

As described above, in *Moen*, the Supreme Court stated that, "[i]f the evidence is relevant to prove intent, then it should be tested under" the *Johns* factors. 309 Or at 67. Because the evidence at issue in *Moen*—prior threats by the defendant against his wife and her family—was relevant to "hostile motive, which in turn is probative of intent," the court applied the *Johns* test. *Id.* at 68. But in *Turnidge*, the court clarified that the *Johns* test applies only to evidence admitted under a doctrine-of-chances theory. 359 Or at 434.

In *Turnidge*, the defendant was charged with crimes in connection with a bombing at a bank, and, over the defendant's OEC 404(3) objection, the trial court admitted evidence that, years before the date of the charged crimes, the defendant had called in a bomb threat to a different bank. *Id.* at 428. On review, the Supreme Court held that, although the trial court and the parties analyzed the admissibility of the bomb threat under *Johns*, "the analytical framework that *Johns* announced was specific to the 'doctrine of chances' relevancy theory at issue in that case," which was not at issue in *Turnidge*. *Id.* at 434. The court explained that most of the charges against the defendant "required the state to prove that [the] defendant acted 'intentionally,'" but that did not mean "that the state's proof of that element was governed by *Johns.*" *Id.* at 436. The court explained that "[p]rior bad acts evidence can be relevant to a defendant's intent on theories other than the doctrine of chances." *Id.*

As an illustration, the court provided the example of a defendant telling the victim "on one day that he would strangle her to death if she dated another man," and then, one or several days later, after seeing her on a date

with another man, shooting and killing her. *Id.* The court explained:

> "In that example, the evidence of the prior threat would be relevant to prove the defendant's motive, and perhaps a plan, and, in turn, that he had acted intentionally, even if the defendant's theory of the case was *not* that he had killed the victim by accident (or otherwise with a nonculpable mental state, such as in self-defense). Such evidence would not depend on the doctrine of chances for its logical relevance to those theories on which it permissibly may be admitted, and, because the doctrine of chances would not be at work, the factors that *Johns* identified would not apply. Admissibility of the prior threat thus would not depend on whether the threatened physical act (to strangle to death) differed from the ultimate physical act that killed the victim (shooting with a gun)."

*Id.* at 436 (emphasis in original). Instead, the court explained,

> "the prior threat would be directly relevant to establish the defendant's motive, plan, and willingness to commit the charged crime, and the logical relevance of the evidence as to that purpose would not depend on any inference that the defendant had committed similar past acts with sufficient frequency that it becomes increasingly unlikely—with each new act committed—that he committed the act inadvertently or by accident."

*Id.* at 436-37. Although that evidence would be relevant to the defendant's intent, "a prior threat of that kind is not 'intent' evidence based on a doctrine of chances theory." *Id.* at 437. "[R]ather, it would be offered to show that the defendant had a motive to commit the charged murder (jealousy), and a plan (to kill the victim if she dated another person), and that he acted intentionally, in the sense that he acted 'with a conscious objective to cause the result or to engage in the conduct so described.' ORS 161.085(7)." *Turnidge*, 359 Or at 437.

     With that explanation of the relevance of evidence of prior threats against a victim in mind, we return to the facts of *Moen*. As described above, the defendant was charged with shooting his wife and her mother, and the prior bad acts evidence was that, three weeks before the shooting,

he had threatened his wife, her mother, and her son and had pointed a shotgun at them. *Moen*, 309 Or at 65-66. The Supreme Court held that that type of evidence "has special relevance to the issue of a hostile motive, which in turn is probative of intent," and that the defendant's prior threat was relevant to prove that he "later acted consistent with that expressed intent." *Id.* at 68-69.

Thus, in *Moen*, the Supreme Court did not rely on the doctrine of chances, because "the logical relevance of the evidence [did] not depend on any inference that the defendant had committed similar past acts with sufficient frequency that it [became] increasingly unlikely— with each new act committed—that he committed the act inadvertently or by accident." *Turnidge*, 359 Or at 436-37. Accordingly, the court's holding in *Turnidge* that "the analytical framework that *Johns* announced was specific to the 'doctrine of chances' relevancy theory at issue in that case," 359 Or at 434, abrogates *Moen*'s reliance on the *Johns* test. *See also Clarke*, 279 Or App at 386 n 7 (*"Turnidge* strongly indicates that the *Moen* court was incorrect in applying the *Johns* framework to the evidence at issue in that case.").

That is so notwithstanding the *Moen* court's statement that the *Johns* analysis applied because the evidence was "relevant to prove intent." *Moen*, 309 Or at 67. As the court explained in *Turnidge*, "[p]rior bad acts evidence can be relevant to a defendant's intent on theories other than the doctrine of chances." 359 Or at 436. As *Turnidge*'s example demonstrates, evidence of prior threats against the victim can be relevant to prove intent in that respect without implicating the doctrine of chances and, accordingly, without being subject to the *Johns* analysis. *See id.* at 436-37. The Supreme Court's analysis abrogates *Moen*'s holding that the *Johns* analysis applies whenever the challenged evidence is offered to prove intent. Instead, as explained in *Turnidge*, the *Johns* analysis applies whenever the evidence is offered to prove "intent," specifically in the sense of "absence of mistake or accident," under the doctrine of chances. Evidence offered to prove intent by showing the defendant's motive is not subject to the *Johns* analysis.

In the present case, the trial court held that the evidence was admissible under *Moen* to show defendant's "hostile motive" against his domestic partners. That theory of admissibility did not rely on the doctrine of chances. Accordingly, the court did not err in not applying the *Johns* analysis, and defendant's argument provides us with no ground for reversal of the court's decision to admit the evidence under *Moen*. Because defendant has not established that the court erred by admitting the evidence under *Moen*, we need not, and do not, address defendant's argument that the court erred by admitting the evidence under *Johns*.[6]

## B.  *Jury Instruction*

In his second assignment of error, defendant asserts that the trial court erred by failing "to instruct the jury that defendant's prior assaults could not be considered unless the jury first found that defendant committed the *actus reus*" of the charged assault. Defendant concedes that his second assignment of error is unpreserved and asks that we review it for plain error. *See* ORAP 5.45(1) (authorizing appellate courts to review an error of law apparent on the record). To qualify as plain error, an error must satisfy three requirements: (1) it must be one of law; (2) it must be apparent, meaning that the point must be "obvious" and "not reasonably in dispute"; and (3) it must appear on the record, meaning that "the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). As explained below, we reject

---

[6] We note that the Supreme Court has not held, in *Moen*, *Turnidge*, or any other case of which we are aware, that evidence of assaults or threats against people totally uninvolved in the charged crime and against whose class the defendant shows no generalized animosity can be probative of motive or "hostile motive." Because, as noted above, 281 Or App at 61, defendant's argument against the trial court's reliance on *Moen* in this case is based solely on the court's failure to apply the *Johns* analysis and does not address any other aspect of the trial court's application of *Moen*, we express no opinion on whether the "hostile motive" theory can extend to such a group or, to the contrary, whether that theory presents no more than evidence of a defendant's propensity for domestic assault. Nor do we express an opinion about what evidence a party must present to establish that prior bad acts committed years before a charged crime are probative of the defendant's motive at the time of the charged crime.

defendant's second assignment of error because defendant has failed to establish that the trial court erred, much less that it plainly erred.

To support his second assignment of error, defendant relies on *Leistiko* and *Pitt*. In *Leistiko*, the Supreme Court held that evidence offered to prove intent on a doctrine-of-chances theory cannot be admitted unless "the defendant either concedes the act that requires proof of a mental state or the trial court instructs the jury not to consider uncharged misconduct evidence offered to prove intent unless and until the jury finds the act that requires proof of intent to have been done and is proceeding to determine intent." 352 Or at 185. *See also Pitt*, 352 Or at 580-81 (a trial court cannot admit other acts evidence to prove the defendant's intent unless (1) the defendant stipulates to the commission of the charged act or the record contains sufficient evidence to permit the trier of fact to conclude that the charged act occurred and (2) the trial court instructs the jury that it cannot consider the evidence for any purpose unless it first finds that the defendant committed the charged act).

As mentioned, the state submitted a jury instruction that complied with *Leistiko*, but the trial court modified the instruction. The state concedes on appeal that the modified instruction did not comply with *Leistiko*, in that it did not inform the jury that it could not consider the evidence of the two prior assaults unless and until it first determined whether defendant had committed the *actus reus* of the charged assault.

*Leistiko* and *Pitt* would aid defendant if the trial court had admitted the evidence of defendant's two prior assaults only on a doctrine-of-chances theory; but the trial court admitted the evidence under both *Johns* and *Moen*. And, as the Supreme Court recently held in *Turnidge*, "although a *Leistiko*-styled limiting instruction may be required when prior bad acts evidence is offered to prove 'intent' or 'absence of mistake' under the doctrine of chances theory of relevancy, such an instruction is not required when prior bad acts evidence is admitted for other relevant purposes." 359 Or at 445. The Supreme Court explained:

> *"Leistiko*, in effect, was predicated on the fact that, under the doctrine of chances, the prior bad act is only conditionally relevant—that is, its relevancy depends on whether the factfinder first agrees that the defendant committed the charged criminal act, which it can do if the defendant concedes as much or if, before considering the prior bad act evidence, the factfinder resolves any dispute of fact on the point against the defendant. That same rationale does not generally apply to other theories on which prior bad acts may be relevant, however."

*Turnidge*, 359 Or at 445 (internal citation omitted). Accordingly, the Supreme Court concluded that the trial court had not erred by failing to give a *Leistiko* instruction regarding the prior bad acts evidence in the case, which was that the defendant, who was charged with crimes in connection with the bombing of a bank, had previously phoned in a bomb threat to a different bank and had observed the response. *Id.* The Supreme Court explained that the evidence had been admitted to prove that the defendant had an "affirmative plan to rob a bank, a relevant and admissible purpose under OEC 404(3)," and "[i]f believed by the jury for that purpose, the evidence tended to show both that [the] defendant engaged in the charged conduct and did so with the required mental state." *Id. See also Clarke*, 279 Or App at 390 (no plain error in failing to give a *Leistiko* instruction regarding evidence admitted under *Moen*, because the error was not obvious; "the 'doctrine of chances' did not apply, and no limiting instruction would have been required under *Leistiko*").

Here, as discussed above in the analysis of defendant's first assignment of error, the trial court admitted evidence of defendant's two prior assaults under both *Johns* and *Moen*, and defendant's only argument regarding the admissibility of the evidence under *Moen* is unavailing. Accordingly, because defendant has not established that the trial court erred by admitting the evidence of defendant's two prior assaults to prove "hostile motive," which does not depend on the doctrine of chances and is relevant to both whether the defendant committed the *actus reus* and whether he did so with the required *mens rea*, defendant has not established that the trial court was required to give a *Leistiko* instruction.

## C.  *OEC 403 Balancing*

As mentioned, after the parties filed their opening briefs, the Supreme Court issued its opinion in *Williams*, in which it held that "OEC 404(4) * * * supersede[s] OEC 404(3) in criminal cases, except, of course, as otherwise provided by the state or federal constitutions." 357 Or at 15. And, the Supreme Court further held that, in child sexual abuse cases, evidence of other acts by the defendant can be admitted to prove a character trait of the defendant to show that the defendant acted in accordance with that trait, but that the Due Process Clause of the United States Constitution makes admission of such evidence contingent upon OEC 403 balancing. 357 Or at 20.

Relying on *Williams*, defendant argues, among other things, that the trial court erred in admitting the evidence of the two prior assaults without first balancing the probative value of the evidence against the danger of unfair prejudice in accordance with OEC 403 and, that, if the trial court had conducted the balancing, it would have been required to exclude the evidence.[7] Defendant concedes that he did not request the balancing, but he asks us to review for plain error.

In *Turnidge*, the court stated, "if a trial court determines that prior bad acts evidence is relevant to a nonpropensity purpose under OEC 404(3), the court, on a proper motion, must weigh the probative value of the evidence against its potential to unduly prejudice the defendant." 359 Or at 442 (citing statement earlier in *Turnidge* that, "[a]t

---

[7] Defendant also contends, "[A]s argued in defendant's opening brief, the prior assaults were too dissimilar to the charged act to properly invoke the doctrine of chances. Because evidence of the prior assaults was not admissible under the doctrine-of-chances theory of relevancy, its only possible relevance was as propensity evidence." From there, he further contends that, because the evidence was propensity evidence, it was irrelevant under OEC 401, unfairly prejudicial under OEC 403, and inadmissible under the Due Process Clause.

Because, as explained above, defendant's only argument regarding the admissibility of the evidence under *Moen*—that the trial court erred by admitting the evidence without applying the *Johns* test—is unavailing, defendant has not established that the trial court erred by admitting the evidence as "hostile motive" evidence, which is a nonpropensity theory of admissibility. Consequently, we reject the arguments in defendant's supplemental brief which proceed from the proposition that the evidence was admitted as propensity evidence.

least unless OEC 404(4) otherwise directs * * * admissibility still depends on a trial court determination, in response to a proper motion, that the probative value of the evidence outweighs the danger of unfair prejudice under OEC 403" and *Williams*, 357 Or at 19 (noting that "[w]hen a party objects, under OEC 403, to 'other acts' evidence offered under OEC 404(4), a trial court must engage in the balancing anticipated by OEC 403")). Although that statement in *Turnidge* indicates that OEC 403 balancing is required, "on a proper motion," before prior bad acts evidence is admitted for a non-propensity purpose under OEC 404(3), the same statement precludes defendant's contention that the trial court plainly erred in not balancing in this case, where he did not request balancing. The statement suggests that a court's obligation to balance arises upon a proper motion by the defendant. Accordingly, at a minimum, it is not beyond dispute that here, where defendant did not request balancing, the court erred in not conducting it. *See State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (to qualify for plain-error review, legal point must be "obvious, not reasonably in dispute"). Thus, any error in failing to conduct OEC 403 balancing is not plain, and we do not address it or defendant's further claim that, if the court had conducted the balancing, it would have been required to exclude the evidence.[8]

Affirmed.

---

[8] We recognize that, in *State v. Zavala*, 276 Or App 612, 617-18, 368 P3d 831 (2016), we recently held that a trial court's admission of evidence of the defendant's prior sexual abuse of a child under OEC 404(4) without balancing under OEC 403 was plain error. We explained that the defendant's petition for reconsideration served as a request for plain-error review in light of the fact that "*Williams* announced a new rule by holding that, in child sexual abuse cases, OEC 404(4) supersedes OEC 404(3) and the admission of 'other acts' evidence under OEC 404(4) requires OEC 403 balancing." *Zavala*, 276 Or App at 617. And we discerned that the legal error was obvious because "*Williams* establishes that federal constitutional concerns require the trial court to engage in OEC 403 balancing for the admission of uncharged sexual conduct." *Id.* at 617.

In this case, where *Turnidge* counsels that we should continue to apply the *old* rule—OEC 404(3)—and states that OEC 403 balancing is required "*on a proper motion*," it is not obvious that the trial court erred by failing to conduct OEC 403 balancing absent a request for such balancing.