Argued and submitted January 29, 2015, convictions for unlawful delivery
of marijuana and unlawful possession of marijuana reversed and remanded,
otherwise affirmed June 29, 2016

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DAVID BRENT HUDMAN,
*Defendant-Appellant.*

Josephine County Circuit Court
10CR0852; A152410

379 P3d 659

David O. Ferry, Deputy Public Defender, argued the cause
for appellant. With him on the brief was Peter Gartlan, Chief
Defender, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued
the cause for respondent. With him on the brief were Ellen F.

Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

### ARMSTRONG, P. J.

Defendant appeals a judgment of conviction for unlawful delivery of marijuana, ORS 475.860,[1] and unlawful possession of marijuana, ORS 475.864.[2] Defendant's wife owned a home surrounded by agricultural land. Sheriff's deputies found over 60 pounds of marijuana in the home, which led the state to charge defendant with several marijuana-related crimes. Defendant testified at trial that his wife had leased the land surrounding their home to people whom he believed were lawfully growing and storing marijuana. The state countered that, although three people were lawfully growing marijuana on defendant's wife's property, defendant was using that fact to conceal a larger, unlawful marijuana-growing operation in which he was engaged. Defendant was convicted of two drug offenses. He contends on appeal that the trial court erred in admitting evidence that, a year after the seizure of the marijuana for which he was prosecuted, defendant had stolen and sold in California marijuana that another person had grown on defendant's wife's property. He also challenges the admission of evidence that, after the deputies' seizure of the marijuana from his home, he had obtained a medical-marijuana card. We conclude that the trial court erred in admitting evidence that defendant had stolen marijuana and sold it in California and reverse defendant's convictions.

Law enforcement officials received reports that a large number of vehicles were going to and from a house at which growing marijuana plants were visible from a nearby road. Sheriff's deputies went to investigate the reports. The deputies received permission to enter the property and approached the house. They were greeted outside the house by defendant's wife, who explained that the property was being used to grow medical marijuana. The deputies asked defendant's wife to show them identification, and she went inside the house to

---

[1] The versions of the drug statutes that apply and to which we refer in this case are those that were in effect in 2010. At that time, ORS 475.860(1) (2009) provided:

"It is unlawful for any person to deliver marijuana."

[2] ORS 475.864(1) (2009) provided:

"It is unlawful for any person knowingly or intentionally to possess marijuana."

retrieve it. Defendant then came out of the house, approached the deputies, and invited them into the house.

Once inside, defendant told the deputies that the land surrounding the house was being used to grow medical marijuana for three medical-marijuana cardholders, and he offered to show the deputies the marijuana that he was keeping for the cardholders. The deputies followed defendant to the master bedroom, where he showed them 11 bags of marijuana that collectively weighed 6.83 pounds. The deputies asked defendant how much marijuana he intended to give each cardholder. He responded that he planned to give each of them between two and five pounds of marijuana. The deputies told him, however, that, under Oregon law at the time, a grower could provide a medical-marijuana cardholder with no more than one and one-half pounds of marijuana.

The deputies asked defendant if there was any additional marijuana in the house. Defendant led them to another bedroom and showed them 56 bags of marijuana that collectively weighed 58.8 pounds. The deputies asked defendant what he intended to do with that marijuana. He responded that he was not sure and that his wife was in charge of getting marijuana to patients. In the course of his interaction with the deputies, defendant presented them with paperwork showing that three people were authorized to grow marijuana on the property, that two additional people were authorized to receive marijuana grown on the property, and that seven people had applied for medical-marijuana cards that, if granted, would allow them to receive marijuana grown on the property. Before leaving, the deputies noted that there was a large white moving van parked in front of the home. They searched the van but did not find any evidence linking it to drug activity.

The deputies seized all of the marijuana in the home. The state subsequently charged defendant by indictment with unlawful manufacture of marijuana, ORS 475.856, unlawful delivery of marijuana, ORS 475.860, and unlawful possession of marijuana, ORS 475.864.

The case proceeded to trial. The state's theory of the case was that, although defendant had several acquaintances

who were authorized to grow limited amounts of marijuana on the land surrounding defendant's home, defendant had used the legal operation to conceal a larger, illegal marijuana-growing operation. Among other things, the state noted the large discrepancy between the amount of marijuana that the acquaintances were authorized by Oregon law to grow, at most 18 pounds, and the amount of marijuana that was found in the home, over 60 pounds. Additionally, the state presented testimony that defendant had told the deputies that he was responsible for delivering the marijuana to medical-marijuana cardholders. The state also introduced into evidence a video recording found in the home that showed a person whose appearance and voice were consistent with defendant's discussing how to create a large marijuana-growing operation in order to live "the lifestyle."

Defendant had a very different theory of the case. He contended that his wife had leased the house and the surrounding property to two men for the men to conduct a lawful marijuana-growing operation. Eventually, the two men had had a falling out, and, 36 hours before the deputies' visit, defendant and his wife had moved back into the house. In support of that defense, a man named Jezzini testified that he had begun a marijuana-growing operation with a person named Kaoa and that, along with an additional, unnamed participant, they had been growing marijuana for 12 medical-marijuana patients. Defendant testified that both his wife and Kaoa had assured him that everything about the marijuana operation was legal. Defendant denied telling the deputies that he was going to deliver marijuana to patients. He further explained that, when he told the deputies that each patient would get two to five pounds of marijuana, he was only relaying what Kaoa had told him about the amount of marijuana that Kaoa would give to the marijuana cardholders.

The state asked defendant on cross-examination whether he had obtained a medical-marijuana card after the deputies' visit. Defendant objected that the evidence was not relevant. The trial court overruled the objection, and defendant testified that he had not obtained a medical-marijuana

card. On redirect examination, defendant's attorney restated the state's question, clarifying that the state was asking whether defendant had obtained a medical-marijuana card after, not before, the deputies' visit. Defendant said that he had misunderstood the state's question and testified that, after the deputies' visit, he had obtained a medical-marijuana card that authorized him to grow and possess marijuana.

Toward the end of defendant's case, the state told the court that it intended to call two rebuttal witnesses. The court ultimately had one of the witnesses, Katzenbach, present her testimony in the form of an offer of proof so that the court could determine whether her testimony was admissible. Katzenbach testified outside the presence of the jury that, a year after the deputies' visit to defendant's home, she had entered into an agreement that allowed her to grow marijuana on defendant's wife's land. She testified that, during the time that she was growing marijuana on the land, defendant told her that it was his intention to take the marijuana that he was growing to California to sell it and that it had been his plan to do the same thing with the marijuana that the deputies had seized the year before. According to Katzenbach, defendant ultimately stole from her the marijuana that she had grown on the property, took it to California in a white moving van, and sold it.

In light of the offer of proof, the state contended, and defendant conceded, that portions of Katzenbach's testimony were relevant to impeach defendant's testimony, specifically, that defendant had told her that he had intended to sell in California the marijuana that the deputies had found and seized at his home. However, the parties disagreed about the admissibility of the testimony about defendant's theft and sale of Katzenbach's marijuana. The state contended that the testimony was admissible under OEC 404(3)[3] as

---

[3] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

evidence of what can be characterized as a spurious plan,[4] which the state could use to show that defendant had acted in both instances—*viz.*, in dealing with the marijuana seized by the deputies and in stealing Katzenbach's marijuana—in accordance with equivalent plans—*viz.*, using lawful marijuana-related activity to disguise unlawful activity. The state further contended that the testimony was admissible as evidence of defendant's intent with respect to the charged crimes.

Defendant contended that Katzenbach's testimony was improper propensity evidence under OEC 404(3) and was not admissible to establish intent or plan because the two episodes were not sufficiently similar. Additionally, defendant contended that the testimony should be excluded under OEC 403.[5]

The court ruled that Katzenbach's testimony was admissible in its entirety under OEC 404(3) as evidence of intent and plan. In reaching that conclusion, the trial court applied the methodology that the Supreme Court had established in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), to determine the admissibility of other-act evidence as evidence of a defendant's intent. The trial court also concluded that Katzenbach's testimony was admissible to establish that defendant had executed a similar plan in both instances— *viz.*, obtaining marijuana with the intention to transport it to California to sell. Finally, the court applied OEC 403 to the admission of the disputed evidence, concluding that any unfair prejudice to defendant from the admission of the evidence did not substantially outweigh the probative value of the evidence to the state.

---

[4] In *State v. Turnidge (S059155)*, 359 Or 364, 439-40, 374 P3d 853 (2016), which was decided after defendant's trial, the Supreme Court recognized a distinction between true-plan evidence and spurious-plan evidence. True-plan evidence is other-acts evidence that is admissible to show that a defendant formed a plan to commit one or more crimes that included, as part of the plan, both the charged conduct and the other acts. Spurious-plan evidence is evidence that is offered to show that a defendant engaged in a pattern of conduct from which the existence of a plan to commit the charged crimes can be inferred.

[5] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

Katzenbach's testimony on rebuttal was consistent with her testimony in the offer of proof. The jury ultimately acquitted defendant of unlawful manufacture of marijuana but convicted him of unlawful possession and delivery of marijuana. The trial court thereafter entered a judgment convicting defendant of the latter two crimes.

Defendant appeals the judgment of conviction, raising two assignments of error. Defendant contends in his first assignment that the trial court erred in admitting evidence about defendant's theft and sale of Katzenbach's marijuana because the evidence was impermissible propensity evidence under OEC 404(3). Defendant also argues that, under *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), the trial court erred in admitting that evidence without giving the jury an appropriate limiting instruction on the jury's consideration of the evidence as evidence of intent. Defendant contends in his second assignment that evidence that he had obtained a medical-marijuana card after the deputies had seized the marijuana from his home was not relevant evidence and, hence, that the court erred in admitting it. The state defends both of the challenged evidentiary rulings on appeal.

After this case was submitted to us, the Supreme Court held in *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), that OEC 404(4) superseded OEC 404(3) in criminal cases on the admissibility of evidence of other acts committed by defendants. However, the state has not asked us to affirm defendant's conviction on the alternative basis that, even if the other-act evidence was improperly admitted under OEC 404(3), the evidence was nonetheless admissible under OEC 404(4). Consequently, our task on appeal is limited to determining whether the trial court erred in admitting the disputed portion of Katzenbach's testimony under OEC 404(3). *See State v. Davis*, 279 Or App 223, 233, 381 P3d 888 (2016) (applying OEC 404(3) rather than OEC 404(4) to determine the admissibility of other-act evidence when state had not argued to trial court or on appeal that the evidence was admissible under OEC 404(4)).

Evidence is admissible under OEC 404(3) if it is relevant for a purpose other than to prove the person's

disposition or propensity to commit particular acts and that the person had acted in conformity with that disposition or propensity. *Johns*, 301 Or at 548-49. Here, the trial court admitted Katzenbach's testimony as evidence of intent and plan. We examine each of those rationales in turn.

To determine whether other-act evidence is relevant to show that a defendant engaged in the charged criminal conduct with the requisite intent, the trial court must consider the five factors set out in *Johns*, including whether "the physical elements of the [other] act and the [charged] act are similar." 301 Or at 556. If the answer to any of the five *Johns* questions is negative, then the evidence is not admissible as evidence of intent. *State v. Pratt*, 309 Or 205, 211, 785 P2d 350 (1990).

We conclude that defendant's theft and sale of Katzenbach's marijuana was not physically similar enough to the charged acts to be admissible to prove defendant's intent. We recognize that there are some similarities between the charged conduct and the alleged theft and sale of Katzenbach's marijuana: Both involved the use of lawful marijuana-related activity to facilitate unlawful marijuana-related activity. The problem is that, physically, the two sets of acts were fundamentally different.

We begin by noting that Katzenbach testified that she grew her marijuana on her own. The state charged defendant with possession and distribution of marijuana on a very different theory—*viz.*, that defendant was one of several people who were collectively growing more marijuana than permitted under Oregon law. Furthermore, Katzenbach testified that defendant stole her marijuana. The state presented no evidence that the charged conduct involved theft. In sum, the testimony that defendant sought to exclude—that defendant had stolen and sold Katzenbach's marijuana—was of a different nature than the conduct involved in the underlying criminal charges—defendant's participation in a conspiracy to grow a larger quantity of marijuana than was legally permissible. Hence, the two acts did not share the physical similarity required by *Johns* to make Katzenbach's testimony about defendant's theft and sale of her marijuana admissible to prove defendant's intent.

In light of *Leistiko*, it follows from that conclusion that the other-act evidence was not admissible as evidence of plan, either. The court held in *Leistiko* that plan evidence requires a greater degree of similarity with the charged conduct than does evidence of intent for the evidence to be admissible as plan evidence. The state charged the defendant in *Leistiko* with, among other things, three counts of rape for three sexual assaults, each of which involved a different victim. 352 Or at 174. The defendant's theory at trial was that he had engaged in consensual sexual intercourse with the three victims. A woman who was not one of the three victims testified that the defendant had sexually assaulted her. The defendant objected to her testimony on the ground that it was inadmissible propensity evidence under OEC 404(3), but the trial court admitted it. The defendant was convicted of two of the three counts of rape and appealed, assigning error to the admission of the testimony about the uncharged sexual assault.

The state argued on appeal that the trial court had correctly admitted that testimony because it was admissible as evidence of the defendant's intent. The state also contended that the testimony was admissible to show that "it is possible to infer a plan from [the multiple episodes of] prior similar conduct." 352 Or at 187.

The Supreme Court first determined that the testimony was inadmissible to prove the defendant's intent because the sexual assault that was the subject of the testimony was not sufficiently similar to the other three sexual assaults. *Id.* at 186. It then concluded that, because the testimony was not admissible to prove the defendant's intent, it was not admissible as plan evidence. The court reasoned that, when other-act evidence is offered to prove intent, the evidence serves to negate the defendant's innocent state of mind. But when other-act evidence is offered to prove a plan, it is used to prove both the defendant's intent *and* to prove that the defendant had a preconceived criminal plan and acted in accordance with the plan. *Id.* at 188. Because other-act evidence that is offered as plan evidence serves to do more than merely negate the defendant's innocent state of mind, the evidence must share more in common with the

charged conduct than it would have to share to be admissible as evidence of intent. Consequently, if other-act evidence is not similar enough to charged conduct to be admissible to prove intent, it follows that it is not admissible to prove the existence of a plan. *Id.* at 189 ("[T]he fourth woman's testimony was not sufficiently similar for it to be admissible to prove intent. It necessarily follows that her testimony also was not sufficiently similar to be admissible to prove a plan."). In light of *Leistiko* and our conclusion that the disputed portion of Katzenbach's testimony was not admissible as evidence of defendant's intent, it necessarily follows that the evidence was inadmissible as evidence of a plan.

Further, we cannot conclude that there is little likelihood that the error in admitting the disputed testimony affected the verdict because it allowed jurors to infer that defendant was the type of person who violated marijuana laws and that he had done so again. Hence, we reverse defendant's convictions for unlawful delivery and unlawful possession of marijuana based on the error in admitting the disputed portion of Katzenbach's testimony, which obviates the need for us to address defendant's second assignment of error.

Convictions for unlawful delivery of marijuana and unlawful possession of marijuana reversed and remanded; otherwise affirmed.