Submitted October 23, 2015, affirmed July 20, petition for review denied December 8, 2016 (360 Or 697)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN ROY STUBBLEFIELD,
*Defendant-Appellant.*

Marion County Circuit Court
12C48570, 13C40022, 13C40489;
A155638 (Control), A155639, A155640

380 P3d 1126

Peter Gartlan, Chief Defender, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## LAGESEN, J.

In these criminal cases, which were consolidated for purposes of trial and appeal, a jury convicted defendant of two counts of first-degree robbery, one count of second-degree robbery, three counts of unlawful use of a vehicle, one count of fleeing or attempting to elude a police officer, one count of reckless driving, one count of second-degree criminal mischief, and one count of felon in possession of a firearm. On appeal from the judgments of conviction, defendant assigns error to the trial court's denial of his motion to suppress evidence discovered in the stolen truck that defendant crashed while fleeing police officers, as well as the trial court's grant of the state's motion *in limine* to admit evidence regarding an uncharged bank robbery committed by defendant. We affirm.

### BACKGROUND

An illegal left turn brought an end to defendant's crime spree. Defendant, who was driving a stolen pick-up truck at the time, was observed making that turn by Deputy Dunkin of the Marion County Sheriff's Office. Dunkin signaled to defendant that he should stop. Defendant did not stop. He fled, accelerating into a parking lot. Dunkin pursued him. Defendant lost control of the truck and crashed into a support pole at a Sonic restaurant, causing significant damage to the pole and disabling the truck.

Dunkin got out of his car and told defendant to show his hands. Defendant did not comply. Instead, he shouted "Yahoo!" and ran from the truck. Dunkin ran after defendant, caught up to him, subdued him with a taser, and arrested him.

In the meantime, Deputy Derschon, also with the Marion County Sheriff's Office, arrived at the scene of the crash. Derschon was instructed to inventory the truck before it was to be impounded for suspicion of DUII. In accordance with his office's policy for towing and impounding vehicles, Derschon conducted an inventory search, during which he felt that there could be something valuable or dangerous concealed in two very heavy bags in the truck. Derschon found various items in each bag, including a black-powder

revolver. Derschon had gone through the glove compartment, but found nothing there.

After the vehicle was impounded, the Salem Police Department determined that the truck had been stolen from within its jurisdiction, and took over the investigation. A few days after the incident, Salem Police Officer Baskett searched the truck in the impound lot, after obtaining permission to do so from the insurance representative of McKenzie, the man from whom the truck had been stolen. Baskett went through the truck twice, inspecting the contents of closed containers as he did so. In those containers, Baskett found and seized several items. That evidence, together with other evidence seized via search warrant—not at issue in this appeal— connected defendant to four separate bank robberies that had taken place within the three months leading up to defendant's apprehension.

The first bank robbery, which occurred in September 2012, in Salem, involved two robbers and the use of a stolen pick-up truck, which was covered in WD-40 when it was recovered. One of the robbers was wearing a welder's mask. The other person was wearing a baseball cap. Witnesses later recounted that one of the guns used in this robbery did not look real.

The second bank robbery, which occurred in October 2012, in Salem, also involved two robbers—one of whom stayed in the car, a stolen El Camino, to drive away. When that car was recovered it was also covered in WD-40. The robber who entered the bank was wearing a black cloth over his face and was also wearing a distinctive coat with black and white stripes. The gun used in this robbery was a revolver.

The third bank robbery, which occurred in Salem approximately two weeks before defendant was arrested, again involved two robbers—one of whom stayed in a stolen pick-up truck to drive away. The robber who went inside was wearing a black cloth mask, a white baseball cap, and a medium-length coat that also had black and white stripes. The gun used in this robbery looked like a long-barrel revolver. Video footage revealed that there was a bicycle in the back of the

stolen pick-up truck. That stolen pick-up truck was the one that defendant crashed the night he was apprehended.

Finally, the evidence found in the truck also connected defendant to a fourth bank robbery that occurred in Albany, Oregon, 10 days before defendant was caught. Among that evidence was a black cloth mask and bicycles. The Albany robbery involved only one robber who arrived and departed on a bicycle. The robber wore a mask that matched the description of the mask worn by the robber in the second robbery as well. Other evidence also connected defendant to the fourth robbery. Video evidence from the banks that were robbed showed that the robber in the fourth robbery was wearing a coat with the same black-and-white striping as the coat worn by one of the robbers in the second and third robberies. The robber was also wearing a baseball hat in this robbery, and he left that hat behind. Investigators tested the hat for DNA, and found that the DNA from the hat matched defendant's DNA.

As a result of defendant's apprehension and the discovery of the evidence connecting defendant to the Salem robberies, defendant was charged with two counts of robbery in the first degree and one count of robbery in the second degree in Case No. 13C40022, two counts of unlawful use of a vehicle (UUV) in Case No. 13C40489, and one count of UUV, one count of attempting to elude a police officer, one count of reckless driving, one count of criminal mischief in the second degree, and one count of felon in possession of a firearm in Case No. 12C48570. All three cases were tried together.

Before trial, the parties litigated the two motions that are the subject of this appeal. Defendant moved to suppress the evidence found when Derschon and Baskett opened closed containers in the stolen truck that defendant had crashed, arguing that by searching the truck and opening the containers without a warrant, the officers had violated defendant's right to be free from unreasonable searches and seizures under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The state moved *in limine* to introduce evidence of the uncharged Albany robbery,

including the video evidence of the robber involved, and the evidence that defendant's DNA was on a baseball hat recovered in the investigation of that robbery. The state's theory was that the evidence was relevant to prove identity, that is, that defendant was the person involved in the three Salem robberies.

The trial court denied defendant's motion to suppress. It ruled that defendant had abandoned any constitutionally protected privacy interest in those containers by leaving them in a stolen vehicle and running away and, alternatively, that the evidence inevitably would have been discovered either pursuant to the consent search of the truck authorized by the lawful owner of the truck, or because the original owner of the truck, when going through the contents of the truck, would have discovered all items left by defendant and given them to police.[1] The court allowed the state's motion *in limine*, concluding that the evidence regarding the Albany robbery was admissible under OEC 404(3) to prove identity, and that the probative value of the evidence outweighed any potential prejudice, for purposes of OEC 403. Defendant was convicted as charged.

## ANALYSIS

As noted, defendant assigns error to the trial court's denial of his motion to suppress, and the grant of the state's motion *in limine*. We address each in turn, concluding that (1) the trial court correctly determined that defendant abandoned the containers that he left in the stolen truck and that, for that reason, the inspections of those containers did not violate defendant's rights under Article I, section 9; and (2) that the trial court correctly determined that the evidence regarding the fourth Albany robbery was admissible under OEC 404(3).

A.  *Motion to Suppress*

We review a trial court's ruling on a motion to suppress to determine whether the court's findings of historical fact are supported by constitutionally sufficient evidence in

---

[1] The original owner, McKenzie, testified at the suppression hearing that he went through the contents of the truck and that he would have passed anything "dangerous" on to police, had he discovered anything.

the record, and whether the trial court correctly applied the applicable law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In so doing, we "presume that the facts were decided in a manner consistent with the court's ultimate conclusion," if the trial court did not make express findings of fact on all pertinent issues, and if the evidence allows for application of that presumption. *Id.*

Defendant claims that, by inspecting the closed containers in the stolen, crashed truck, officers violated his rights under Article I, section 9, and that the trial court erred when it concluded that he had abandoned those containers so as to extinguish his constitutionally protected interests in them.[2] We disagree.

For purposes of Article I, section 9, defendant abandoned the containers in the truck—such that the officers' subsequent warrantless seizure and searches of them did not violate defendant's rights under Article I, section 9— if defendant through words or conduct demonstrated that he relinquished all constitutionally protected interests in those containers. *State v. Cook*, 332 Or 601, 608, 34 P3d 156 (2001). In determining whether a defendant relinquished all constitutionally protected interests in property, thereby abandoning it for purposes of Article I, section 9, we consider three factors:

> "(1) whether a defendant separated himself or herself from the property as a result of police instruction, or illegal police conduct; (2) whether a defendant left the property on private, as opposed to public, property; and (3) whether a defendant made any attempt to hide the property or in any other way manifest an intention to the police that he or she was attempting to maintain control over it."

*State v. Stafford*, 184 Or App 674, 679, 57 P3d 598 (2002), *rev den*, 335 Or 181 (2003) (internal quotation marks and citations omitted).

In this case, all three factors weigh in favor of the conclusion that defendant abandoned the containers at issue.

---

[2] Below, defendant also argued that the inspection of the closed containers in the truck violated his rights under the Fourth Amendment. He does not make a Fourth Amendment argument on appeal.

Police did not order defendant away from the containers, or prevent him from taking steps to maintain his interests in them; defendant fled, leaving them behind. Police did not engage in any illegal conduct in seeking to stop defendant for a traffic violation, or in pursuing him when he declined to stop. Defendant left the containers in a stolen truck—a location where defendant would have had no lawful authority to retrieve them, absent the (unlikely) assistance of the truck's owner, something that defendant would have known when he decided to leave the containers behind. Defendant made no attempt to take the containers with him and did nothing else to signal to police that he had any intention to maintain control over them. On the contrary, by shouting "Yahoo!" and running away from the crash site, defendant indicated an intention to escape the situation by traveling light, unencumbered by whatever property he had had with him in the stolen truck. Cf. *State v. Dickson*, 173 Or App 567, 24 P3d 909 (2001) (holding that the defendant abandoned his constitutionally protected interests in his backpack when he dropped that backpack on the ground while fleeing officers).

In view of all those circumstances, the trial court was correct to conclude that defendant relinquished his constitutionally protected interests in the containers and other property that he left in the stolen truck, and was correct to deny defendant's motion to suppress.

B. *Motion in Limine*

Defendant next assigns error to the trial court's grant of the state's motion *in limine* to admit evidence of the Albany bank robbery. He contends that the trial court erred in concluding that the evidence was admissible under OEC 404(3) to prove defendant's identity. In response, the state argues that the trial court correctly concluded that the evidence was admissible under OEC 404(3). Alternatively, the state argues that the trial court properly admitted the evidence under OEC 404(4) and *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), which the Supreme Court decided after the trial court ruled on the motion *in limine* in this case. We conclude that the trial court properly admitted the evidence under the settled case law regarding OEC 404(3) and affirm on that basis, without addressing the state's proposed

alternative basis for affirmance. *See State v. Turnidge (S059155)*, 359 Or 364, 431-32, 374 P3d 853 (2016).

We review for legal error the trial court's decision to admit evidence of uncharged misconduct under OEC 404(3). *See Turnidge*, 359 Or at 429 (so reviewing trial court's decision under OEC 404(3)). As explained in *State v. Johnson*, 313 Or 189, 194-95, 832 P2d 443 (1992), the admissibility of "other crimes" evidence under OEC 404(3) is governed by a three part test: (1) the evidence must be independently relevant for a noncharacter purpose, (2) the proponent of the evidence must offer sufficient proof that the uncharged conduct was committed and that defendant committed it, and (3) the probative value of the uncharged misconduct must not be substantially outweighed by the dangers set forth in OEC 403. Here, the trial court correctly applied that test, and correctly concluded that the evidence of the Albany robbery was admissible under that test.

As to the first factor, where, as here, the state seeks to use evidence of an uncharged crime for the noncharacter purpose of proving identity, it must satisfy two requirements. *State v. Pinnell*, 311 Or 98, 109-11, 806 P2d 110 (1991). First, the state must demonstrate that there is a very high degree of similarity between the charged and uncharged crimes. And, second, the state must show the methodology is distinctive so as to earmark the acts as the handiwork of the accused. *Id.*

In this case, the state's evidence satisfies those criteria. As the trial court found, the evidence from the Albany robbery demonstrated that a robber wore a "highly distinctive" and unusual black-and-white striped coat, which was similar to the coat worn in the second and third charged robberies and which, in the trial court's words, was "not in any way a common garment." The evidence also showed that there was a "distinctiveness in the balance of the garb worn in the robberies, the dark mask, including the tailing material behind it. And, the robberies also [were] similar in both the weapon used and the manner, the demeanor of the robberies." In addition, the evidence showed that the Albany robbery also included an old fashioned black-powder revolver, that the robber used a mountain bike to flee the

scene, and that the robber wore a baseball cap. The evidence further showed that a masked robber in the first and second charged robberies used an old fashioned black-powder revolver, like the one used in the Albany robbery, and that a masked robber in the third robbery wore a baseball cap—like the one in the Albany robbery—and had a bicycle—like the robber in the Albany robbery. We are persuaded, as the trial court concluded, that that evidence, in particular, the uniquely styled coat, distinguishable mask, and the old-fashioned weapon "earmark[ed] the crimes with a very high probability as the work of the same person."

As to the second factor—the sufficiency of the proof that the Albany robbery was committed and that defendant was the person who committed it, that evidence was sufficient. The video evidence of the robbery demonstrates that it was committed. The evidence that defendant's DNA was found on the robber's baseball cap is sufficient proof that defendant is the person who committed that robbery.

Finally, as to the third factor, the trial court balanced the probative value of the evidence against the danger for prejudice presented by it, as required under *Johnson,* 313 Or at 194-95, and did not abuse its discretion in concluding that the probative value outweighed any risk of prejudice. The evidence was highly probative on the issue of identity, which was a significant issue in the case. The DNA evidence tended to establish that defendant was the person who committed the Albany robbery, making it likely that defendant was the person who committed the other robberies while wearing the distinctive garb that defendant wore during the Albany robbery, and while using the same old fashioned black-powder revolver. The state was not proposing to use the evidence in an improper way. The evidence of the Albany robbery was not likely to inflame the jury, given that defendant was facing charges on three robberies. And, as the trial court observed, any prejudice could be addressed by a limiting instruction, if defendant wanted one. Therefore, the evidence of the Albany robbery was properly admitted under OEC 404(3) and trial court's decision to grant the state's motion *in limine* was not a legal error.

Affirmed.